(No. 67524.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. VERNON SCHMITT *et al.*, Appellees.

*Opinion filed September 27, 1989.*

Neil F. Hartigan, Attorney General, of Springfield,
and Richard M. Daley and Cecil A. Partee, State's At-

torneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Joseph G. Howard and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

James J. McGraw, of Chicago, for appellee Frank Nielsen.

JUSTICE CALVO delivered the opinion of the court:

Defendants, Vernon Schmitt and Frank Nielsen, were charged in the circuit court of Cook County with unlawful delivery of a controlled substance to Glenn Schneider on January 5, 1983, in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)). Pursuant to agreement of the parties, defendants were tried simultaneously by the court with the understanding that evidence admissible only as to defendant Schmitt would not be considered against defendant Nielsen. Defendants were found guilty and, following the trial court's denial of their posttrial motions, they appealed. The appellate court, with one justice dissenting in part, reversed defendant Nielsen's conviction and granted him a new trial. (173 Ill. App. 3d 66.) Schmitt's case was remanded with directions. The State sought leave to appeal the result only as to defendant Nielsen, and we granted the State's petition.

Prior to trial, Nielsen moved for a severance of his case from that of Schmitt. Nielsen alleged that Schmitt had given written and oral statements implicating Nielsen and that their theories of defense were antagonistic. The State filed a response in opposition to the motion. No ruling was procured on the motion prior to the commencement of trial. In the midst of the first witness' testimony, Nielsen's attorney noticed the omission and brought it to the court's attention. By agreement of all

parties concerned, the court proceeded as if the cases had been severed, conducting simultaneous but separate bench trials. During the course of the trial, Nielsen's attorney repeatedly objected to testimony regarding Schmitt's statements implicating Nielsen, lodging a continuing objection to such statements, and, anticipating Schmitt's testimony in his own defense, reminded the court that it had to consider that testimony only "against him, not against Mr. Nielsen." The court, time and again, sustained counsel's objections and assured Nielsen's counsel:

"Throughout, the Court is not considering statements made by Schmitt with regard to Nielsen."

Given the court's rulings, which removed Schmitt's oral and written statements directly implicating Nielsen from consideration, the circumstantial evidence against Nielsen came from agents who participated in the drug investigation resulting in Nielsen's arrest. They testified that Schmitt moved back the time for the drug transaction to 4:30 p.m., rather than 4 p.m. as originally scheduled, because his "source" would be at his residence at 4 p.m. Subsequently, at 4 p.m., Nielsen and a female companion arrived at Schmitt's residence shortly before the drug transaction in question, went inside, stayed approximately two minutes, and then departed in Nielsen's automobile. Thereafter, agent Schneider arrived at Schmitt's residence and purchased approximately 2½ ounces of cocaine from Schmitt for $5,500. Schmitt was promptly arrested and agreed to assist the agents in apprehending his drug source. Schmitt placed a telephone call, in which his end of the conversation was recounted by Agent Hamm as follows:

"It is me, Vern. [pause] It's okay, you can come on over; I've got your money; he's gone. [pause] When will you be here? Okay."

Minutes later, the agents were informed by radio that Nielsen was approaching the residence in his automobile. The agents hid at various locations throughout the residence and awaited Nielsen's arrival. A short time later, Nielsen arrived and, in the conversation with Schmitt that followed, made several statements which, at the very least, indicate Nielsen was possessed of substantial knowledge of cocaine trafficking and had had dealings with Schmitt in the past.

Nielsen was overheard to say, "Just make sure you know who you are dealing with." In response to Schmitt's statement indicating his customer was satisfied, Nielsen replied, "He should have been satisfied because it was good rock from Bolivia." Nielsen provided Schmitt with a history of cocaine processing, warned Schmitt to always dust off his scales after use, and suggested Schmitt keep records of his transactions using abbreviated dollar values and code names for his customers. Nielsen said he used the word "gas" as Schmitt's code name. The agents also overheard Nielsen counting money and discussing the division of the $5,500. After the money was divided, Nielsen began to leave and was then arrested.

Subsequently, Nielsen's apartment was searched pursuant to his consent. Inside, agents discovered small vials with screw-on caps, a scale, some leafy matter, and three small notebooks in which the word "gas" appeared in conjunction with the dates December 29 and 30, 1982, and the numeric notations 550 and 1100.

Following presentation of the State's case, including Schmitt's written statement naming Nielsen as his supplier, which was specifically "offered against defendant Schmitt," Nielsen's attorney moved for a directed verdict, arguing there was no evidence to connect Nielsen to the "transaction of January 5th." Nielsen's motion

was denied. The court then entertained arguments by the defense and the State, following which the court announced that it would defer pronouncement of its finding in Nielsen's case until after the conclusion of Schmitt's testimony:

> "I want to assure you, I am ready to decide the case; but, under the circumstances, I do not wish to give my decision until after I have heard the rest of the Schmidtt [sic] case."

Nielsen and his attorney requested and received permission to leave the courtroom during Schmitt's testimony. Schmitt testified in support of his defense of entrapment and his contention that law enforcement officials had reneged on a promise not to prosecute him for his drug sale to Agent Schneider if he "set up" his drug source.

After presentation of all the evidence in both cases, the court found Schmitt and Nielsen guilty, noting:

> "We have had two separate trials. I have reviewed all the evidence in each, and made the appropriate separation, and seen to it that no evidence with respect to one defendant could be used against the other defendant."

In argument upon Nielsen's post-trial motions, Nielsen's counsel argued that there should have been separate trials and that the court considered evidence admissible only as to Schmitt against Nielsen. Counsel raised the court's delayed ruling in Nielsen's case as evidence of the court's error. The court denied Nielsen's motions, and in so doing, the following colloquy ensued:

> "THE COURT: Mr. Johnson, you raised the fact that the Court not decide [sic] the Nielsen case after it was argued, and instead wait [sic] until having concluded the Schmitt case. I note from the charge, as you are aware, that the charge against Mr. Nielsen was an accountability charge in that he was accountable for the delivery of the substance to Mr. Snyder by Mr. Schmitt.
>
> So, accordingly logic caused me to believe that he [sic] should first reach a verdict on Schmitt in order to be

certain that I was correct in reaching a verdict on Nielsen.

MR. JOHNSON: Well, Judge, I don't think the law requires that even on the accountability theory that the principal be found guilty. The principal doesn't have to be found guilty on the theory of accountability.

THE COURT: That is true.

MR. JOHNSON: So what I'm saying is the fact that Mr. Nielsen rested his case, at that point there was no more evidence presented on behalf of Mr. Nielsen nor the State presented any other evidence against Mr. Nielsen, and at that point I believe the Court should have ruled, because at that point all the Court was going to hear was additional evidence on the Schmitt case, which was a severed case ***.

THE COURT: And my belief was that it was necessary for the Court to be certain as to the separation of the cases, and that's why I wanted to see to it that I had all the evidence in on the Schmitt case to make sure that the reasons for my ruling were in fact separate, and I would say this, too, on the finding of guilty with respect to Nielsen: I substantially rely on the conversation in the kitchen and the statement that Mr. Nielsen made during that conversation in the kitchen that the agent overheard, and then the other physical evidence that was introduced with respect to Mr. Nielsen's case. So I was satisfied in that regard that the basis for the decision was settled.

MR. JOHNSON: Judge, even if the Court brings out the book, some of the physical evidence is made stronger evidence from the Schmitt case. If not for the evidence of the Schmitt case the nicknames and numbers would have been more up in the air and made a weaker case. So what I'm saying is there was an enforcement in the Schmitt case, and if the Court had its doubts at the close of the Nielsen case it was at that time the Court should have ruled and would not have had to wait—

THE COURT: Okay. I did not have a doubt at that time, and I waited to make sure that none would arise later because of anything else that might have come in

that might have raised a doubt. I did not have a doubt in my mind at the close of the Nielsen case."

Nielsen appealed, and the appellate court reversed and remanded for a new trial, with one justice dissenting. (173 Ill. App. 3d 66.) The majority of the appellate court panel concluded that "[r]efusal to grant Nielsen a severance constituted reversible error." (173 Ill. App. 3d at 95.) The court, relying upon *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, determined that the Supreme Court's decision in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, should dictate the result in this case. (173 Ill. App. 3d at 92.) In rejecting the presumption that a judge in a bench trial has considered only competent and proper evidence, the appellate court relied exclusively upon the colloquy previously set forth between Nielsen's counsel and the trial judge during hearing on post-trial motions. The appellate court found that the trial court's response to defense counsel was "flawed" because (1) the charge against Nielsen was not an accountability charge, (2) even on an accountability theory, the law does not require a finding of the principal's guilt as a prerequisite to a finding of the accessory's guilt, and (3) contrary to the court's statements otherwise, a "verdict on Schmitt would not make certain the correctness of the trial court's verdict on Nielsen." (173 Ill. App. 3d at 89.) According to the majority of the appellate court panel:

"For the trial court to have completely separated and dissected the *** trial evidence in the case at bar and exclusively applied it to that defendant to which it was solely applicable, totally uninfluenced by all the other incriminating evidence which was inapplicable to such defendant, required Herculean intellectual gymnastics which exceed human capabilities." (173 Ill. App. 3d at 85.)

While the appellate court was, for the most part, correct in holding the trial court's accountability analysis flawed,

we disagree with the remainder of the majority opinion and reverse.

The appellate court erroneously concluded that the circuit court "refused" to grant Nielsen a severance. The record indicates that Nielsen's counsel did not procure a ruling on his motion for severance prior to commencement of trial, but, as the comments of the parties reveal, he and the State embarked upon trial of the matter under the misapprehension that a "severance" had indeed been granted. Once the omission of a formal ruling was discovered, Nielsen's attorney acquiesced in proceeding with separate, but simultaneous, bench trials wherein evidence admissible only against one defendant would not be considered against the other. The court proceeded as if Schmitt's and Nielsen's cases were separate, never specifically ruling on the motion to sever.

We note a movant has a responsibility to obtain a ruling on his motion if he wishes to raise a question pertaining thereto on appeal. (*People v. Hornaday* (1948), 400 Ill. 361.) This, Nielsen has not done. Moreover, where, as here, a party acquiesces in proceeding in a given manner, he is not in a position to claim he was prejudiced thereby. (*People v. Kelley* (1961), 23 Ill. 2d 193; *People v. Watson* (1946), 394 Ill. 177.) Nielsen cannot claim error in the procedure employed by the court where he willingly participated without objection.

Furthermore, unlike the appellate majority, we believe a trial court is capable of compartmentalizing its consideration of evidence. To do so is no "Herculean" task, but one which courts across the State engage in every day. To be sure, there are situations which would seemingly tax even the most disciplined legal minds (see *People v. Gholston* (1984), 124 Ill. App. 3d 873); however, the circumstances of this case do not fall into that category. We do not mean to imply that the procedure employed in the instant case is without its pitfalls—there

are many. Any court employing such a procedure would do well to exercise the utmost caution to recite for the record its findings in each case and the reasons for its rulings. That said, we do not find the task beyond the abilities of circuit court judges or one to be undertaken only by the offspring of Zeus.

The appellate court's resort to *Bruton* and *Lee* is similarly misguided. Unlike the court in *Bruton*, we are not concerned here with the efficacy of jury instructions in eliminating the prejudice to a defendant that arises from the use at a joint trial of a nontestifying codefendant's inculpatory statement (*Bruton*, 391 U.S. at 129-30, 20 L. Ed. 2d at 481-82, 88 S. Ct. at 1624-25), nor are we confronted with a trial court's expressed reliance upon portions of a codefendant's confession in determining a defendant's guilt, as the court was in *Lee* (*Lee*, 476 U.S. at 531, 90 L. Ed. 2d at 520, 106 S. Ct. at 2057). In fact, there is nothing in the record to indicate the court in this case relied upon post-arrest statements of Schmitt, oral or written, wherein he named Nielsen as his drug source. To the contrary, the court repeatedly assured Nielsen that it would not consider such statements against him. The court was well aware of the inadmissible nature of Schmitt's statements naming Nielsen as his source, having been inundated with a torrent of objections from Nielsen's attorney. In this respect, the instant case closely parallels, factually, cases where courts were aware of improper arguments, evidence, or questions, and were thus presumed to have disregarded them (*People v. Pelegri* (1968), 39 Ill. 2d 568, 574-75; *People v. Earl* (1966), 34 Ill. 2d 11, 13; *People v. Wallenberg* (1962), 24 Ill. 2d 350, 353), and is dissimilar to *People v. Nuccio* (1969), 43 Ill. 2d 375, 396, cited by Nielsen, wherein there was "no indication of the court's awareness of [the] impropriety." We must presume the trial court considered only competent evidence unless the con-

trary affirmatively appears of record or the trial court, confronted with serious improprieties in a case where a defendant's guilt is not manifest, fails to comment on the irregularities or even indicate an awareness thereof.

The only misconception the trial court fell prey to in this case concerned application of principles of accountability. We believe the trial court's lapse did not, as the appellate court held, result in prejudice to defendant and therefore does not warrant reversal of Nielsen's conviction. Contrary to the appellate court's position (173 Ill. App. 3d at 89), Nielsen need not have been charged as an accessory in order to be convicted under the indictment which charged both Schmitt and Nielsen with delivery of a controlled substance to Agent Schneider. An indictment need not distinguish between an act performed by a principal and one performed by an accessory. (*People v. Nicholls* (1969), 42 Ill. 2d 91, 100; *People v. Touhy* (1964), 31 Ill. 2d 236, 240.) There is no doubt, however, that a guilty verdict in Schmitt's case should not have been a prerequisite to finding Nielsen guilty, as the trial court apparently believed. Section 5—3 of the Criminal Code provides that a person who is legally accountable for the conduct of another may be convicted upon proof that the offense was committed and that he was accountable, without regard to the disposition of charges against the principal or the failure to charge. (Ill. Rev. Stat. 1987, ch. 38, par. 5—3.) There were separate trials, and there should have been separate verdicts, each independent of the other. At the close of the State's case, the court had heard all of the evidence it was going to hear against Nielsen. When Nielsen rested without presenting evidence, the court should have ruled on Nielsen's guilt or innocence.

However, it does not appear that the court's erroneous belief prejudiced Nielsen. Even if the court believed Nielsen's conviction had to be premised on Schmitt's, the

error could only have inured to the benefit of Nielsen. The court's belief merely placed another obstacle in the State's path to conviction. It does not, as Nielsen claims and the appellate court found, indicate that the court considered, as evidence against Nielsen, Schmitt's self-serving testimony in his defense wherein he repeatedly identified Nielsen as his drug source. The court's comments throughout the trial refute such a conclusion. There is nothing to indicate Nielsen was prejudiced by the trial court's misconception, and we conclude the court's error did not contribute to the verdict. See *People v. Smith* (1967), 38 Ill. 2d 13, 15.

Even assuming *arguendo* the court did consider some of Schmitt's statements which directly implicated Nielsen, we believe the error was harmless beyond a reasonable doubt. It is, after all, the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. (*United States v. Hasting* (1983), 461 U.S. 499, 509, 76 L. Ed. 2d 96, 106, 103 S. Ct. 1974, 1980.) The appellate court majority failed to consider harmless error in reaching its decision to reverse.

We will briefly summarize the evidence which the trial court could properly have considered as evidence of Nielsen's guilt. In setting up a time for the delivery, Schmitt telephoned Agent Schneider to move back the time for the meeting from 4 p.m. to 4:30 p.m. Schmitt informed Schneider that his "source" would be at his residence at 4 p.m. and Schmitt did not want Schneider and the source to meet. Nielsen appeared at Schmitt's residence at 4 p.m. Nielsen returned to the residence in response to a telephone call from Schmitt, informing him that Schneider had gone and that Schmitt had Nielsen's money. In the course of the subsequent conversation at Schmitt's home, Nielsen made several incriminating statements upon which the trial court "substantially re-

lied." Those comments indicated that Nielsen was aware that a drug transaction had taken place, that he had knowledge of the quality of the cocaine and its point of origin, and that he expected a share of the money from the transaction. It was also clear that Nielsen and Schmitt had had previous dealings. Nielsen said he used a code name, "gas," to refer to Schmitt in records he kept of his drug transactions. Evidence subsequently discovered in Nielsen's apartment corroborated Nielsen's statements.

Of this evidence, the only evidence even arguably inadmissible was Schmitt's statement that his "source" would be at his residence at 4 p.m. We find this evidence to be admissible against Nielsen based on prior decisions of this court. There are instances where a nontestifying codefendant's statement by inference implicating a defendant may be admissible against the defendant if some exception to the hearsay rule applies. (*Dutton v. Evans* (1970), 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210; *People v. Duncan* (1988), 124 Ill. 2d 400, 414; *People v. Goodman* (1980), 81 Ill. 2d 278; *People v. Davis* (1970), 46 Ill. 2d 554.) The co-conspirator exception to the hearsay rule is applicable here. Schmitt's statement is admissible against Nielsen because the trial evidence establishes a conspiracy or joint venture between Schmitt and Nielsen, and the statement was made in furtherance of and during the pendency of the conspiracy. (See *Goodman*, 81 Ill. 2d at 283.) In this case, Nielsen's statements at Schmitt's residence provided *prima facie* evidence of a joint venture and Schmitt's statement to Schneider, made prior to the delivery, was meant to facilitate the transaction.

This evidence, admissible under the co-conspirator exception to the hearsay rule, does not violate the confrontation clause of the sixth amendment and is considered reliable because (1) the statement was not an assertion

about a past fact, (2) abundant evidence showed that declarant had personal knowledge of the incident, (3) it was unlikely that the declarant's statement was founded upon faulty recollection, (4) the statement made was spontaneous and against the declarant's penal interest, (5) the statement was not crucial or devastating, and (6) defendant was able to cross-examine the person who contended the statement was made. (*Dutton*, 400 U.S. at 87-89, 27 L. Ed. 2d at 226-27, 91 S. Ct. at 219-20; *Goodman*, 81 Ill. 2d at 284-85.) We note, too, that the statement was not self-serving. See *Goodman*, 81 Ill. 2d at 285.

Indeed, Schmitt had no motive to implicate Nielsen when he made the statement to Schneider. To the contrary, Schmitt did not want to reveal Nielsen's identity, nor did he want Nielsen and Schneider to meet, for that acquaintance would have rendered Schmitt's role as a mediator in further drug transactions superfluous, and would have ultimately deprived Schmitt of an opportunity to profit. It is only where one considers other evidence that Schmitt's statement implicates Nielsen at all. In this respect, the statement in this case is very similar to those found admissible in *Goodman* and *Davis*.

In *Goodman*, the evidence complained of concerned an undercover agent's conversations with Goodman's codefendant, Bury, prior to and during the drug transaction. Bury did not testify. The agent quoted Bury as saying his contact lived in rural Okawville in a trailer and had his phone disconnected out of fear of a wiretap. Goodman lived in a trailer in Okawville and had reconnected his telephone only recently. Outside the restaurant wherein the agent, Bury and Goodman met on the night of the sale, the agent asked to test the cocaine. Bury replied, "My man would freak if I left with his cocaine." Goodman was still seated inside the restaurant. In response to Bury's statement, the agent offered

$1,000 as security, which Bury took inside to Goodman. Like Nielsen, Goodman was not directly identified by Bury as a party to the drug transaction; however, other evidence, when considered with Bury's statements, clearly pointed to Goodman as a participant, and this court considered Bury's statements reliable enough to be admissible against Goodman.

In *Davis*, the evidence at trial consisted primarily of the testimony of Earl Shelby, a known addict, who participated in a "controlled sale" at the request of the police. Shelby, provided with marked money, met with Pearlie Hines and informed him that he wanted to purchase narcotics. Hines said he did not then have access to the drugs but was waiting for "Twin" (Davis), who had the key to the apartment. When Davis arrived, the group proceeded to a nearby apartment where Davis handed a key to Hines, who opened the door. White powder, subsequently proved to be narcotics, was on the table inside, and Davis told Hines to give Shelby what he wanted. After Hines inquired of Davis whether the supply was of better quality than the last, Shelby and Hines sampled the narcotics. Shelby gave Hines the marked money, obtained two tinfoil packets of narcotics, and left. He subsequently returned with the police who arrested Davis and another defendant and found the marked money on Davis' person. Police officers corroborated Shelby's testimony. Defendants did not testify. They were convicted of selling and dispensing narcotics.

On appeal, Davis contended that the admission of co-defendant Hines' conversation with Shelby prior to Davis' arrival at the scene violated his right of confrontation. (*Davis*, 46 Ill. 2d at 557.) This court relied upon the co-conspirator exception to the hearsay rule to reject Davis' claim that Shelby's statement was inadmissible by reason of *Bruton*. (*Davis*, 46 Ill. 2d at 557-59.) In *Davis*, the trial court had sustained Davis' objection to testi-

mony regarding the statement and had instructed the jury not to consider it against Davis. This court, noting that the evidence need not have been ruled inadmissible, held that Davis' position on appeal stood "merely as a complaint that he may not have received the full benefit of an error in his favor." (*Davis*, 46 Ill. 2d at 559.) The same can be said in this case.

The circuit court said throughout the trial it was "not considering statements made by Schmitt with regard to Nielsen." Since the statement in question was made prior to the delivery and did not name or directly implicate Nielsen, it is not entirely clear whether the court considered the statement in question against Nielsen. The prosecutor certainly used the statement extensively in her argument, without objection from Nielsen's attorney. As it is competent and relevant evidence, we presume the court did consider it, even absent any indication that the trial court was aware of the basis supporting its admissibility. We note that there is nothing in *Davis* to indicate the trial court in that case was aware the statements at issue were admissible under a co-conspirator theory. Also, as was the case in *Davis*, evidence of the same matter contained in Schmitt's statement can be found in Nielsen's admissible statement regarding his prior drug transactions with Schmitt. Nielsen, in effect, admitted he was Schmitt's "source" when he described his recordkeeping methods as they pertained to Schmitt. It can, therefore, be inferred from this evidence that Nielsen was Schmitt's source on the occasion of the January drug sale. The timing of Nielsen's comings and goings at the Schmitt residence is further—although not essential—evidence of his guilt.

There is no indication of record that the trial court considered Schmitt's post-arrest statements implicating Nielsen against Nielsen. All indications are to the contrary. Moreover, even if some error occurred, on this evi-

dence, we find the error harmless beyond a reasonable doubt.

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*