THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DWAYNE CROSSLEY, Defendant-Appellant.

First District (6th Division)   No. 1—89—1960

Opinion filed September 4, 1992.

Turner & Wolff, of Chicago (Daniel H. Wolff, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Jeffery J. Wawrzyniak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant Dwayne Crossley and codefendant Pamela Edison were charged by indictment with one count of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)) and with one count of possession of cannabis with the intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)). Defendant was also charged with two counts of unlawful use of a firearm by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1). Upon defendant's motion, the trial court granted a severance and conducted simultaneous but separate trials on the charges against defendant and his codefendant Edison. Following the simultaneous bench trials, defendant was convicted of possession of a controlled substance with intent to deliver and of possession of cannabis with the intent to deliver, but was acquitted of the weapons charges. The trial court sentenced defendant to concurrent terms of 12 years and 5 years, respectively. The court also ordered that these sentences run consecutive to a sentence imposed by another judge for a prior conviction on an unrelated charge. Codefendant Edison, who is not a party to this appeal, was convicted of possession of a controlled substance and received a sentence of 30 months' probation as well as a $500 fine.

On appeal, defendant contends that (1) he was deprived of his sixth amendment right to confront the witnesses against him by the court's refusal to allow him to cross-examine codefendant Edison and by the court's refusal to admit prior inconsistent statements made by Edison, (2) the State produced insufficient evidence to prove him guilty beyond a reasonable doubt, and (3) the sentences imposed on him were excessive and improper under Illinois law.

The record reveals that defendant was arrested October 6, 1987, and was subsequently charged by indictment with one count of possession of a controlled substance with intent to deliver, with one count of possession of cannabis with the intent to deliver, and with two counts of unlawful use of a firearm by a felon. Defendant waived his

right to a jury and moved to sever his trial from that of codefendant Pamela Edison, who had been arrested with him on charges of possession of a controlled substance and of cannabis with intent to deliver. The trial judge granted defendant's motion to sever and stated that he would hold separate but simultaneous trials. In making this ruling, the judge indicated that he would hear the State's evidence only once and would permit separate cross-examination of the State's witnesses. The trial judge stated that for each defendant, he would consider only the evidence which was properly admissible against that defendant.

When the trials commenced, the State called Officer James Bauer of the Chicago police gang crimes unit, who testified that at approximately 10 p.m. on October 6, 1987, he and another officer from the Burnham police department went to a residence at 14412 South Calhoun in Burnham, Illinois, to serve a search warrant on defendant, also known as Ameen Muhammad. According to Bauer, there were four vehicles parked outside the house, and two of the four were registered to the defendant. Two more vehicles, which were parked in the garage, displayed stickers indicating that licenses had been applied for. These stickers bore the name of Amad Muhammad. Bauer testified that the officers rang the doorbell, and defendant, who was wearing only a pair of pants, answered the door.

Upon entering the house, the officers told the occupants, which included defendant, codefendant Edison, and her three young children, to sit in the living room while they searched the premises. Bauer testified that he found a purse in the kitchen which contained an Illinois driver's license and other identification cards which bore the name of codefendant Pamela Edison. The purse also contained $75 in cash and a plastic bag which held a white powder as well as a rock-like substance which Bauer suspected was cocaine. The officers also recovered a Smith & Wesson revolver from the master bedroom. Bauer testified further that the officers searched the basement and found a large tool box. Inside the tool box was a large plastic bag containing a brick of a white rock-like substance. Bauer stated that he observed drug paraphernalia on a work table in the basement and that the officers also discovered a locked safe in the basement.

Bauer testified that he went back upstairs and informed defendant and codefendant Edison of their *Miranda* rights. Bauer then requested the combination to the locked safe which had been discovered in the basement. Bauer testified that defendant said he would not open the safe for anyone. Bauer testified that he then returned to the basement, broke into the safe, and found $400 in cash as well as two handguns, three clear plastic bags containing a crushed green plant,

and a small booklet. Bauer stated that when he asked codefendant Edison whose safe was in the basement, she replied that anything in the basement belonged to the defendant and that she never went down into the basement.

According to Bauer, codefendant Edison said that she had lived in the house with defendant for some time, and she also indicated that one of the children who lived there with them was defendant's son. Defendant's counsel objected to the admission of these statements, and the trial judge stated that he would consider them only with regard to the charges against codefendant Edison. Bauer testified further that defendant indicated that all but one of the cars parked outside belonged to him. Defendant stated that the Mazda belonged to Edison.

Bauer stated that when the search was completed, defendant and codefendant Edison were brought to the police station. Before leaving the house, both defendant and codefendant went into the master bedroom and changed their clothes.

Upon cross-examination by defendant's counsel, Bauer acknowledged that all of the drugs, guns, and money recovered were found in closed containers, and none were in plain view. Bauer admitted that he recovered no contraband or keys when he conducted a search of defendant's person. Bauer was also questioned about the registration for another car owned by defendant which reflected an address other than the residence searched.

During cross-examination by counsel for codefendant Edison, Bauer stated that defendant did not respond at all when Edison said that the items in the basement did not belong to her but were the defendant's. Bauer testified further that Edison denied all knowledge about the safe. Bauer acknowledged that the search warrant which he executed did not bear Edison's name, and he stated that the warrant was directed at defendant. Defendant's counsel reiterated his standing objection to questions regarding the warrant and to Edison's statements with regard to defendant. In response to these objections, the trial judge assured counsel that he would consider this evidence with regard to Edison alone.

The State next called Rosetta Driver, an employee of Independence Bank in Chicago, who testified that she was a safe deposit box attendant. Driver's duties included maintenance of records for the safe deposit boxes and assistance of clients in their use of the boxes. Driver stated that defendant and Shirley Crossley rented safe deposit box number 0752 at the bank. Driver stated further that she had met Shirley Crossley and that Shirley Crossley and Pamela Edison were

not the same person. According to Driver, Shirley Crossley was an older woman, but she did not know if she was defendant's mother. Driver testified that defendant had opened the safe deposit box four times, and the address listed for the safe deposit box was for a home on Luella Street and was not the address of the residence in Burnham where defendant was arrested.

Officer Dennis Cullom testified that when he entered the home, he walked to the back of the house to the kitchen, where he found codefendant Edison and three children. Cullom told defendant, codefendant Edison, and the children to sit in the living room while the officers searched the premises. Thereafter, Cullom went to the basement, where he discovered the locked safe. Cullom testified that upon opening the safe, the officers discovered that it contained two revolvers, $400 in cash, and three bags of marijuana. Cullom stated further that he pried open the locked tool box and found tools and two plastic bags filled with a substance which he believed was cocaine. Cullom also confiscated a scale, a grinder, a mirror, and razor blades which he believed could be used to cut narcotics. According to Cullom, there were bags in the basement near the washing machine and dryer which contained men's, women's, and children's clothing. On cross-examination by defendant's attorney, Cullom testified that he did not recover any contraband from defendant's person, and he did not see defendant in the basement. In response to questions posed by codefendant Edison's attorney, Cullom stated that he believed defendant was the target of the search warrant and investigation.

Chicago police officer Richard Baranski testified that he recovered a loaded revolver from underneath some women's clothing in the bedroom dresser. Baranski also stated that he observed men's clothing in the closet along with women's clothing.

Chicago police department Sergeant Carl Edinfield testified that he was the raid commander on the evening of October 6, 1987. Edinfield testified that during the search of the residence, he found eight car titles dated in 1987 which listed defendant's address at a different home on Luella Street in Burnham. The names on those titles included Ameen Muhammad, Bobby S. Stevenson, Tommy L. Johnson, Ted Cochell, Pamela Edison, Shirley J. Crossley, and Richard J. Weigle. Several of these titles reflected the address of the house on South Luella.

Edinfield testified further that he also found a safety deposit box key which was designated number 0752 and a letter addressed to defendant at the residence which was the subject of the search warrant executed on October 6, 1987. Edinfield testified that the top

drawer of the bureau in the bedroom contained a large number of men's rings, watches, and cuff links. Edinfield stated that he observed several gold men's rings, some of which bore the initials "D" and "C." Edinfield also saw men's clothing in other drawers of the dresser. Inside the closet, Edinfield saw between 8 and 10 men's suits, several men's shirts, and at least 10 pairs of men's shoes.

On cross-examination by defendant's attorney, Edinfield stated that three of the car titles reflected the address of the house on Luella Street and not the residence where the raid occurred.

Thereafter, the parties stipulated to the chain of custody on all of the physical evidence recovered and to the amounts and purity of the controlled substances. The parties stipulated that Edison was the subscriber for gas and electrical service in the home where the raid occurred. The parties also stipulated that defendant Dwayne Crossley was also known as Ameen Muhammad and that he had previously been convicted of the felony offense of delivery of a controlled substance before another judge.

After the State rested its case in chief, defendant moved for a directed finding, asserting that the cocaine was found in a house which he did not own. Defendant also asserted that the contraband was found in Edison's home and that he did not live there. Defendant argued that the contraband which was recovered from the house was not in plain view; there was no proof that defendant had actually or constructively possessed the contraband; and there was no showing that he owned or had access to the locked safe and tool box which were found in the basement. The State opposed defendant's motion, contending that defendant appeared to live at the home at least part of the time based upon the men's clothing found there and based upon the discovery of other personal items such as the safety deposit box key and the car titles.

Codefendant Edison also moved for a directed finding, asserting that everything which was recovered by the police belonged to defendant and that she had cooperated with police from the inception of the investigation. The State argued that a directed finding in Edison's favor was not warranted because the evidence indicated that she lived in the home and that laundry was done in the basement, despite Edison's statement that she never went into the basement. The court denied both motions for a directed finding. In entering these rulings, the trial judge stated that the evidence demonstrated that both the defendant and codefendant lived in the house; both had control over the premises; and knowledge and possession could properly be inferred for both.

Thereafter, counsel for defendant moved to introduce prior, sworn statements made by Edison during pretrial proceedings and which were exculpatory to the defendant. Defense counsel asserted that Edison would undoubtedly testify on her own behalf and would incriminate him in an effort to exculpate herself. Defendant argued that because Edison would invoke her fifth amendment right to remain silent if called as a witness in his case, she would, under the Federal rules, be deemed unavailable, and her prior, sworn statement would be admissible under the Federal rules.

The trial court denied defendant's motion, finding that under Illinois law, Edison would not be deemed unavailable. Accordingly, the court ruled that, although this evidence could be used to impeach Edison if she took the stand and offered testimony which was inconsistent with her prior statements, defendant could not offer the previous testimony as substantive evidence in his case in chief. The court also ruled that defendant's attorney would not have an opportunity to cross-examine Edison in the event that she took the stand in her own case.

In presenting his case in chief, defendant introduced the mortgage and title to the home at which the search warrant was executed. Defendant also introduced into evidence several letters which were mailed in 1987 from the Internal Revenue Service and from the Department of Health and Human Services and which were addressed to him at the house on Luella Street.

Testifying on her own behalf, codefendant Edison stated that she and her three children lived in the house at 14412 Calhoun in Burnham, Illinois, and that she had bought the house and was responsible for the mortgage and for the other household expenses. Edison testified that she had known defendant since she was 12 years old, that she began a personal relationship with him in 1984, and that defendant was the father of her youngest child, who was three years old. Edison also testified that defendant did not live with her and did not pay the household bills, but he came over to her house several times each week to visit with their child. Edison stated further that defendant frequently stayed the night in her home, and he had moved some clothing, a safe, and some boxes into her house about a month or two before they were arrested.

According to Edison, she used only the laundry room in the basement where the washer and dryer were located, and she did not go into the other two rooms in the basement on a regular basis. Edison stated that defendant moved his property into the back room in the basement which held mostly unused items. Edison testified further

that she had no idea what was in the boxes that defendant had moved into the back room of the basement. According to Edison, she had previously warned defendant that she didn't want any illegal substances around her children, and defendant assured her that the safe and boxes contained only car titles and personal papers and that there was nothing illegal in the items that he had moved into the basement. Edison indicated that she told the police officers on the date of her arrest that the safe and other items found in the basement belonged to defendant and not to her.

Following closing arguments, the trial court found defendant guilty of possession of marijuana with intent to deliver and of possession of cocaine with intent to deliver, but acquitted him of the weapons charges. In making this ruling, the court specifically noted that the State had presented sufficient evidence to prove that defendant lived in the house located at 14412 Calhoun and was where the search warrant was executed. The court noted further that the evidence established that defendant exercised dominion and control over the premises and had knowledge that the controlled substances were on the premises.

The trial court acquitted Edison of the charges of possession of cannabis and of cocaine with intent to deliver, but found her guilty of the lesser included offense of possession of cocaine. In entering this ruling, the trial judge stated that the evidence presented by the State established that Edison lived in the house at 14412 Calhoun and had control of the premises. The court noted, however, that she specifically denied knowledge of and control over the contents of the safe, toolbox, and boxes found in the basement. The court found that Edison's testimony was unrebutted, was consistent with the statements made by her to the police officers at the time the search warrant was executed, and was credible. Accordingly, the court found that the State had presented sufficient evidence to prove only that Edison possessed 4.7 grams of cocaine which were found in her purse.

Defendant filed a motion for a new trial, asserting that the trial court erred in refusing to admit the sworn testimony of codefendant Edison which was made during the pretrial proceedings. Defendant asserted further that the State had presented insufficient evidence to prove him guilty beyond a reasonable doubt and that the trial court erred in finding him guilty where codefendant Edison was found not guilty of the same charges. In denying defendant's post-trial motion, the trial judge specifically stated that his determination of the case against defendant would not have been different even if the prior

statements made by Edison during pretrial proceedings had been admitted.

At the sentencing hearing, Chicago police officer Calvin Holliday was qualified as an expert and testified that the cocaine found in the home where defendant was arrested could have been cut once more before it was sold on the street and would then have had an estimated value of $63,000. Holliday also testified that the cannabis recovered from the home would have a street value of approximately $1,500.

Defense counsel argued in mitigation that defendant was 32 years old and had no previous criminal record with the exception of his conviction on September 14, 1987, for delivery of a controlled substance and for which he was sentenced to nine years in prison. Defense counsel acknowledged that because defendant was free on an appeal bond when he was arrested on the instant charges, any penalty ordered by the court would necessarily run consecutive to the nine-year sentence previously imposed. Counsel for defendant requested that the court impose the minimum sentence allowable which was a term of six years.

The trial court sentenced defendant to concurrent terms of 12 years for possession of cocaine with intent to deliver and five years for possession of marijuana with intent to deliver. The court ordered that these sentences were to run consecutive to the nine-year sentence previously imposed. In sentencing defendant, the trial judge specifically stated that he had considered the facts of the case as well as the statutory and nonstatutory factors in aggravation and in mitigation. The court noted further that there was overwhelming evidence that defendant lived at the house where the contraband was found and that he had exerted control over the contraband. The trial judge noted that defendant was arrested on the instant charges less than one month after he received a nine-year sentence for the prior conviction. Based upon these facts, the trial judge concluded that defendant had not learned "any lesson" and that his character and attitudes indicated that this type of conduct would recur in the future. The trial judge stated that he was aware of what had been offered in mitigation, but determined that a substantial sentence was required to deter the defendant and others who might be inclined to engage in this type of conduct.

In sentencing Edison, the court noted that this was her first offense and that she had three children at home. The court sentenced Edison to a term of 30 months' probation, imposed a $500 fine, and ordered her to perform 360 hours of community service.

Defendant has appealed his convictions and the sentences imposed by the trial court.

We initially consider defendant's claim that he was deprived of his sixth amendment right to confront the witnesses against him by the trial court's refusal to allow him to cross-examine codefendant Edison and by the court's refusal to admit the testimony given by Edison during the pretrial proceedings.

The right of cross-examination secured by the confrontation clause of the sixth amendment precludes the introduction of testimony against a defendant where the defendant has had no opportunity to cross-examine the witness testifying against him. U.S. Const., amend. VI.

Defendant contends that the trial court erred in precluding him from introducing the prior, sworn statement made by Edison. In support of this contention, defendant argues that a defendant's sixth amendment right of confrontation may be violated when a nontestifying codefendant's out-of-court statement implicating the defendant is introduced at their joint trial even though the jury has been instructed to consider such statement only as against its maker. (*Bruton v. United States* (1968), 391 U.S. 123, 126, 20 L. Ed. 2d 476, 479, 88 S. Ct. 1620, 1622; *People v. Williams* (1990), 196 Ill. App. 3d 851, 862, 554 N.E.2d 1040.) Defendant asserts further that where a nontestifying codefendant's statement incriminating the defendant is not directly admissible against the defendant, the confrontation clause of the sixth amendment bars its admission at their joint trial even if the trier of fact is aware that it may not consider the statement against the defendant and even if the defendant's own confession is admitted against him. *Cruz v. New York* (1987), 481 U.S. 186, 193, 95 L. Ed. 2d 162, 171-72, 107 S. Ct. 1714, 1719; *Williams*, 196 Ill. App. 3d at 862.

■ We note, however, that the case before us is factually distinguishable from the cases relied upon by the defendant. In the instant case, defendant successfully moved for a severance. Accordingly, he and Edison were tried in separate, albeit simultaneous, trials. The trial judge specifically stated that he would consider the testimony of each defendant against that defendant only, and both defendant and codefendant acquiesced in this decision. Where a party acquiesces in proceeding in a given manner, he is not in a position to claim he was prejudiced thereby. (*People v. Schmitt* (1989), 131 Ill. 2d 128, 137, 545 N.E.2d 665.) Edison's testimony was introduced after defendant had rested his case and was admissible only against Edison. Edison was not a witness in the case against

defendant, and defense counsel had no right or obligation to cross-examine or to impeach Edison. Consequently, this case did not involve the admission of a codefendant's statement which implicated the defendant at their joint trial, and we find that the cases relied upon by the defendant are not controlling here.

In addition, defendant has not established that the trial court relied upon Edison's statements in finding defendant guilty or that the trial judge was incapable of compartmentalizing the evidence against each defendant.

A reviewing court must presume that the trial court considered only competent evidence unless the contrary affirmatively appears of record. (*Schmitt*, 131 Ill. 2d at 138-39.) A court of review must also presume that the trial court was capable of compartmentalizing its consideration of the evidence in separate, simultaneous bench trials unless the record establishes otherwise. (*Schmitt*, 131 Ill. 2d at 137.) This is not a "Herculean" task, but one which is performed by courts across the State every day. (*Schmitt*, 131 Ill. 2d at 137.) Based upon his particular training and experience, a trial judge, acting as trier of fact, is generally believed to have a superior ability to restrict his use of improper evidence and to consider only competent evidence. (*People v. Moore* (1984), 128 Ill. App. 3d 505, 514, 470 N.E.2d 1284; *People v. McNeal* (1977), 56 Ill. App. 3d 132, 138, 371 N.E.2d 926.) Yet, courts employing such a procedure should recite for the record the findings in each case and the reasons for the rulings. *Schmitt*, 131 Ill. 2d at 138.

The record reveals that in finding defendant guilty of possession of cocaine and of cannabis with intent to deliver, the trial judge recited the evidence against defendant which supported these convictions. In entering these convictions, the court specifically referred to the mortgage and title documents which indicated that the house designated on the search warrant was owned by Edison. The court also referred to the letters from the Internal Revenue Service and mailed to defendant at 8214 South Luella.

In addition, the trial judge noted the evidence which had been considered by the court in determining the defendant's motion for a directed finding of not guilty at the close of the State's case in chief. That evidence included the fact that when the officers arrived at the house to execute the search warrant, defendant was only partially dressed when he answered the door. Before defendant was taken into custody and transported to the police station, he went into the master bedroom and changed his clothes. That evidence also included the fact that defendant had large amounts of clothing

and jewelry in the house, as well as personal papers and documents, and a key to a safety deposit box. Defendant also had several automobiles parked outside the house and in the garage. When questioned about the safe, defendant indicated that he was not going to give the combination to anybody.

Upon consideration of all of the evidence properly admissible against defendant, the trial court concluded that defendant resided in the house at 14412 South Calhoun and, accordingly, exercised dominion and control over the premises where the contraband was discovered. There is no indication in the record that the trial judge considered or relied upon Edison's testimony in finding defendant guilty of the crimes charged.

During trial, the judge repeatedly advised counsel that for each defendant he would consider only the evidence which was properly admissible against that defendant. In ruling on defendant's posttrial motion, the trial judge stated that there was overwhelming evidence that defendant resided in and exerted dominion and control over the premises in which the narcotics were found and that his determination of the case against defendant would not have been different even if the prior statements made by Edison during pretrial proceedings had been admitted.

Upon review of the record before us, we agree that the evidence properly admitted against the defendant was sufficient to sustain his convictions for possession of cocaine and of cannabis with intent to deliver, and we do not believe that the record indicates that the trial judge relied upon Edison's testimony in finding defendant guilty. Consequently, we hold that defendant has not established that he was prejudiced because he was precluded from cross-examining Edison and from introducing her pretrial testimony.

We next address defendant's claim that he was not proven guilty beyond a reasonable doubt. Defendant contends that without Edison's statements implicating him, the State could not have sustained its burden of proving his guilt beyond a reasonable doubt. We find this argument unpersuasive.

To sustain a conviction for constructive possession of a controlled substance, the State must prove that the defendant knew of the presence of the contraband and that it was in his immediate and exclusive possession and control. (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665; *People v. Nettles* (1961), 23 Ill. 2d 306, 307, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939.) Knowledge and possession of drugs are

rarely susceptible of direct proof (*People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767), and may be inferred when the drugs are found on premises under his control (*Nettles*, 23 Ill. 2d at 308-09). Although possession must be exclusive, it may be joint. (*Embry*, 20 Ill. 2d at 335.) Whether defendant had knowledge and possession of the contraband are factual questions for the trier of fact, and those findings will not be disturbed on appeal unless the evidence is so palpably contrary to the findings, or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt as to defendant's guilt. *People v. Knight* (1985), 133 Ill. App. 3d 248, 258, 478 N.E.2d 1082.

■■ As we have noted above, the trial judge meticulously recited the evidence upon which he relied in finding defendant guilty. That evidence included the testimony that defendant was only partially dressed when he answered the door, and he went into the master bedroom and changed his clothes before being transported to the police station. In addition, defendant had large amounts of clothing and jewelry in the house, as well as personal papers and documents, and a key to a safety deposit box. Defendant also had several automobiles parked outside the house and in the garage. When questioned about the safe, defendant indicated that he was not going to give the combination to anybody, and he made no response at all when Edison told the officers that everything in the basement belonged to defendant. The trial court concluded that although defendant may have used other addresses, this evidence established that defendant exercised dominion and control over the house and its contents. Accordingly, the court found that the evidence demonstrated that defendant constructively possessed the contraband found when the search warrant was executed.

A criminal conviction will not be set aside unless the evidence is so improbable that it creates a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) In reviewing a conviction, the court must determine whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290; *Collins*, 106 Ill. 2d at 261.) We find that the State presented sufficient evidence to sustain defendant's convictions for possession of cocaine and of cannabis with intent to deliver.

Finally, defendant asserts that the sentences imposed upon him were excessive as compared to that received by codefendant Edison. We do not agree.

Codefendants who are similarly situated should not receive disparate sentences. (*People v. Earullo* (1983), 113 Ill. App. 3d 774, 792, 447 N.E.2d 925, *cert. denied* (1984), 465 U.S. 1079, 79 L. Ed. 2d 761, 104 S. Ct. 1441.) A disparity in sentences will not be disturbed if warranted by differences in the codefendants' degree of participation, prior criminal background, and rehabilitative potential. See *People v. Wolfe* (1987), 156 Ill. App. 3d 1023, 1028, 510 N.E.2d 145; *People v. Dixon* (1985), 133 Ill. App. 3d 1073, 1087-88, 480 N.E.2d 128; *Earullo*, 113 Ill. App. 3d at 792.

In the case at bar, the evidence established that defendant was the target of the investigation and that his statements indicated he held an ownership or a possessory interest in the safe. In addition, defendant was arrested on the instant charges while free on appeal bond and only one month after he had been convicted of delivery of a controlled substance in an amount which qualified as a Class X offense. In contrast, codefendant Edison had a long employment history, three small children to support, and no prior criminal record.

It is recognized that in considering the propriety of punishment a court of review must give great weight to the judgment of the trial court. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882; *People v. Bergman* (1984), 121 Ill. App. 3d 100, 110, 458 N.E.2d 1370.) The imposition of a sentence is a matter of judicial discretion and, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (*Perruquet*, 68 Ill. 2d at 153.) Additionally, the trial judge is normally in a better position to determine the punishment to be imposed than is a court of review. *Perruquet*, 68 Ill. 2d at 154; *People v. Butler* (1976), 64 Ill. 2d 485, 490, 356 N.E.2d 330.

A reasoned judgment as to a proper sentence must be based upon the particular facts and circumstances of each individual case. (*Perruquet*, 68 Ill. 2d at 154.) Such a judgment depends upon many factors, including the gravity of the offense and the circumstances of commission, the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, and criminal history. (*Perruquet*, 68 Ill. 2d at 154.) The sentencing judge is charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and re-

habilitation of the offender. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541; *Bergman*, 121 Ill. App. 3d at 109.) Yet, the objective of restoring the offender to useful citizenship is to be accorded no greater consideration than that which establishes the seriousness of the offense. *People v. Waud* (1977), 69 Ill. 2d 588, 596, 373 N.E.2d 1, 4; *Bergman*, 121 Ill. App. 3d at 109.

The record in the instant case reflects that in sentencing defendant, the trial judge specifically stated that he had considered the facts of the case as well as the statutory and nonstatutory factors in aggravation and in mitigation. The trial judge noted that defendant was arrested on the instant charges less than one month after he received a nine-year sentence for the prior conviction of delivery of a controlled substance. Based upon these facts, the trial judge concluded that defendant had not learned "any lesson" and that his character and attitudes indicated that this type of conduct would recur in the future. The trial judge stated that he was aware of what had been offered in mitigation, but determined that a substantial sentence was required to deter the defendant and others who might be inclined to engage in this type of conduct.

We find that the trial judge properly considered all relevant factors in sentencing defendant, and we conclude that the disparity in sentences of defendant and codefendant Edison was warranted by the differences in the degree of their participation, prior criminal backgrounds, and their rehabilitative potential.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA,* J., concur.

---

*Justice LaPorta participated in this case before her death. Justice McNamara has taken her place. He has read the briefs and has listened to the tape of the oral arguments.