NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued February 28, 2007
Decided March 29, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 06-2395

| | |
|---|---|
| JOSEPH BRAVIERI,<br>    *Petitioner-Appellant,*<br><br>    v.<br><br>NEDRA CHANDLER,<br>    *Respondent-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 97 C 2832<br><br>Blanche M. Manning,<br>*Judge* |

**ORDER**

Illinois inmate Joseph Bravieri was convicted of murdering two people and is serving life in prison. After unsuccessfully pursuing a direct appeal and state postconviction petition, he petitioned the district court for a writ of habeas corpus. The district court denied relief but granted a certificate of appealability on the question whether Bravieri was denied the right to effective trial counsel. Because Bravieri has failed to demonstrate that the Illinois courts unreasonably applied clearly established federal law in disposing of his claim, we affirm the district court's denial of his petition.

## I.

    For our purposes, we accept as true the factual findings of the Illinois Court of Appeals. *See People v. Bravieri*, Nos. 1-02-0442 & 1-02-0443 (Ill. App. Ct. 2004) (unpublished order); *see* 28 U.S.C. § 2254(e)(1) (affording presumption of correctness to factual findings of state court). During the early morning hours of December 18, 1988, two people were killed in Joann Gasic's apartment: Gasic was shot to death while sleeping, and Carmine Sarlo died from multiple stab wounds, blunt force trauma, and two gunshot wounds. Bravieri and Richard Zuniga were tried in connection with the deaths. At trial the State of Illinois presented evidence that at approximately 7:00 a.m. on December 18, Bravieri, Zuniga, and Sarlo arrived at Gasic's apartment, where they ingested cocaine and played cards in the living room with Gasic's roommate, Sandra Ault. According to Ault, at some point during the card game she saw Bravieri leave the room. She then heard him say, "You got to go Joann, you just got to go," followed by two gun shots. When Bravieri returned to the living room, he was carrying a shotgun. He shot at Ault, but missed; she played dead on the floor hoping that he would leave her alone. Sarlo then suggested that they leave, but Bravieri responded: "No, you got to go, Carmie. You got to go, too." A struggle ensued between Bravieri, Zuniga, and Sarlo. As Ault fled from the apartment, she heard Bravieri say, "You got to shoot him in the head, Ricky." Bravieri, on the other hand, testified that Sarlo fired the gun that killed Gasic, and that he and Zuniga killed Sarlo in self defense during the resulting fight.

    Following a bench trial, a judge found Bravieri guilty on two counts of first-degree murder and sentenced him to life in prison. On direct appeal, the Appellate Court of Illinois affirmed his convictions. In April 1995 the Supreme Court of Illinois denied leave to appeal.

    Bravieri did not immediately file a postconviction petition. Instead, he waited for two years while his co-defendant, Zuniga, litigated a state postconviction petition claiming ineffective assistance of trial counsel. The trial court denied relief, but the state appellate court reversed in part and remanded on the question whether Zuniga's counsel had rendered ineffective assistance by not adequately investigating the case and preparing for trial, and by leaving the courtroom during portions of the trial. Bravieri, seeing the result, then petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2254, claiming as relevant to this appeal that he was denied effective assistance of counsel based upon the alleged shortcomings of Zuniga's counsel. Because his own lawyer had agreed to share trial-preparation duties with Zuniga's counsel, Bravieri reasoned, the shortcomings

of Zuniga's counsel also affected the outcome of his trial.[1]  Bravieri filed his federal petition on April 22, 1997, just two days short of the applicable deadline for inmates, like him, whose convictions became final before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See Newell v. Hanks*, 283 F.3d 827, 833 (7th Cir. 2002).  At the same time, he also petitioned the state court for postconviction relief, and several months later he asked the district court to dismiss his federal petition without prejudice and with leave to reinstate within 30 days following completion of the state-court proceedings.  The district court granted the motion.

Bravieri's postconviction petition was denied by the state trial court without an evidentiary hearing.  He appealed that ruling to the state appellate court.  After consolidating his and Zuniga's postconviction appeals, the Appellate Court of Illinois denied relief in both cases, and the Illinois supreme court denied leave to appeal.  Approximately seven months later, on June 14, 2005, Bravieri moved the district court to reinstate his federal petition, which the district court granted.

Bravieri's § 2254 petition set forth five grounds for relief, but the only issue on appeal concerns his trial counsel's performance.  Bravieri claimed that he received ineffective assistance of counsel because his trial counsel relied on Zuniga's counsel to investigate the forensic evidence, including a fingerprint found on the gun.  That investigation was never completed, said Bravieri, because of Zuniga's counsel's "mental instability and incompetency," resulting in prejudice to him.  Bravieri claims the identity of the fingerprint would have supported his theory of self defense because it would have established that Sarlo also "possessed" the shotgun.

The district court denied Bravieri's petition.  But the court subsequently granted a certificate of appealability on the issue of whether Bravieri was "denied the right to constitutionally effective counsel when his trial lawyer agreed to a

---

[1]Bravieri and Zuniga were tried in separate but simultaneous bench trials. In this type of proceeding, defendants try their cases simultaneously in the same court room before the same judge.  *See, e.g., Illinois v. Schmitt*, 545 N.E.2d 665 (Ill. 1989); *Illinois v. Crossley*, 603 N.E.2d 575 (Ill. App. Ct. 1992); *Illinois v. Gholston*, 464 N.E.2d 1178 (Ill. App. Ct. 1984).  Although the procedure is unusual, it is permitted in Illinois so long as evidence admissible against one defendant is not considered against the other defendant.  *Schmitt*, 545 N.E.2d at 669 ("[W]e believe a trial court is capable of compartmentalizing its consideration of evidence."); *Illinois v. Crossley*, 603 N.E.2d at 581-82 (explaining that a judge is believed to have the ability to restrict his use of improper evidence and to consider only competent evidence).

partial joint defense with counsel for Bravieri's co-defendant, who failed to obtain the promised forensic analysis of the fingerprint on the gun used to shoot Joann Gasic."

## II.

On appeal Bravieri reiterates the argument that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), because he failed to assure that Zuniga's counsel obtained a forensic analysis of the fingerprint found on the shotgun and, as a consequence, prejudiced Bravieri. He also contends, for the first time on appeal, that his lawyer's agreement to work with Zuniga's counsel in preparing for trial created a "conflict of interest." Thus, he says, prejudice to his defense should have been presumed.

Our review of Bravieri's convictions is governed by AEDPA. Under that act, a federal court cannot grant relief under § 2254 to a state prisoner whose federal claims have been adjudicated on the merits by the state courts unless that adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Brown v. Payton*, 544 U.S. 133, 141 (2005); *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). We apply those principles by reviewing the decision of the last state court to rule on the merits of the petitioner's claim: here, the opinion of the Appellate Court of Illinois affirming the denial of postconviction relief. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006). The district court's order denying Bravieri's petition under § 2254 is subject to *de novo* review. *See Charlton*, 439 F.3d at 372.

As an initial matter the state contends that Bravieri's § 2254 petition was untimely. The state says that, in accord with the district court's order dismissing Bravieri's original petition without prejudice, Bravieri was required to reinstate his federal petition within 30 days after his state postconviction litigation ended in October 2004. But the order granting Bravieri's motion to dismiss did not specify that he was required to reinstate the petition within 30 days following completion of the state-court proceedings (even though his motion requested permission to reinstate within that timeframe). Thus the district court allowed the petition to proceed despite Bravieri's moving to reinstate it over eight months later, in June 2005. Although the district court's reasoning is unclear, it appears that the judge believed either that she erred in dismissing the petition in the first instance or that she had never entered a final order. This court's precedent casts some doubt on the veracity of that decision. *See Arrieta v. Battaglia*, 461 F.3d 861, 863 (7th Cir. 2006).

We need not resolve this issue, however, because Bravieri's petition is without merit.

Bravieri contends that his trial counsel was ineffective because he relied on Zuniga's counsel to obtain a forensic analysis of the fingerprint found on the shotgun. According to Bravieri, his lawyer failed to assure that the tasks assigned to Zuniga's lawyer were completed and should have recognized that Zuniga's counsel was incapacitated. But for counsel's failures, Bravieri says, it is "clear there is a strong probability the trial might have progressed differently and the results differed." In the district court Bravieri acknowledged that his ineffective assistance claim is governed by *Strickland*, which holds that a defendant must show both that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. 466 U.S. at 687-88. On appeal, Bravieri essentially recognizes that his claim is governed by *Strickland*.

To establish prejudice under *Strickland*, a petitioner must show that but for counsel's errors there is a reasonable probability that the result of his trial would have been different. 466 U.S. at 694. The court reviewing the claim, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. If it is determined that the petitioner was not prejudiced, the court need not reach the performance issue. *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1014 (7th Cir. 1987); *see, e.g., Walker v. Litscher*, 421 F.3d 549, 558 (7th Cir. 2005). Federal courts do not apply the principles of *Strickland* directly to a claim of ineffective assistance that has been adjudicated by the state courts; instead, the role of the federal courts is limited to analyzing whether the state courts reasonably applied federal law in concluding that trial counsel was not constitutionally ineffective. *Conner v. McBride*, 375 F.3d 643, 657 (7th Cir. 2004).

With respect to this theory, the Appellate Court of Illinois identified *Strickland* as the governing standard and, without reaching the performance issue, determined that Bravieri failed to establish prejudice resulting from counsels' failures to have the fingerprint on the shotgun analyzed. In particular, the court explained:

> Whether that fingerprint belonged to Bravieri or Sarlo does not determine who killed Gasic. Ault described a struggle between [Bravieri, Zuniga,] and Sarlo . . . . There was ample opportunity for the fingerprints of both men to be on the shotgun, regardless of who was the aggressor and who was defending himself. Also, as there was only one fingerprint on the shotgun, which had been shot three times, it is obvious that every finger that touched the shotgun was not leaving an extractable fingerprint. In any event, any

fingerprints that might show up on the shotgun would not undercut Ault's testimony that she heard Bravieri tell Gasic that "she just had to go," and then heard two shotgun blasts; that Bravieri came into the living room and shot at her; and that Bravieri then told Sarlo that "he had to go too."

*Bravieri*, Nos. 1-02-0442 & 1-02-0443, at 15. Bravieri does not specify any other failures of either counsel as relevant to his defense, except to argue generally that "when the facts of this case are viewed in their totality," prejudice was inevitable. Neither does Bravieri contend in his petition to the district court or in his brief to this court that the state court's application of *Strickland* to counsels' failures to analyze the fingerprint evidence was unreasonable.

Instead, Bravieri now tries to back away from *Strickland* by suggesting that prejudice should be presumed under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), because, he says, his trial counsel's agreement to share the burden of trying the cases created a conflict of interest. But the agreement between Bravieri's and Zuniga's counsels to share investigative tasks is not the type of "actual conflict of interest" that triggers a presumption of prejudice under *Cuyler*. A presumption of prejudice is appropriate only if counsel actively represented conflicting interests and the "actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. An actual conflict of interest exists only if counsel's motivation for his strategic decisions derived from a desire to advance an interest adverse to the petitioner's. *Burger v. Kemp*, 483 U.S. 776, 784-85 (1987). Moreover, an actual conflict of interest means "precisely a conflict that *affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis in original). Here, it is undisputed that the lawyers for Bravieri and Zuniga agreed to share some pretrial preparation, that Zuniga's counsel failed to uphold his end of the deal, and that Bravieri's counsel subsequently failed to follow through. Bravieri, however, points to nothing that supports his contention that counsel's deficiencies were the result of his desire to advance Zuniga's interest over Bravieri's, nor does he identify how either of the lawyers represented conflicting interests. Instead, he argues that a conflict of interest theoretically exists merely because the lawyers worked together on the case. But the increased risk of prejudice resulting from lawyers with competing interests working together, by itself, does not give rise to presumption of prejudice. *Burger*, 483 U.S. at 783; *Holleman v. Cotton*, 301 F.3d 737, 743 (7th Cir. 2003). This argument therefore is frivolous.

AFFIRMED.