THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN CATHERS, Defendant-Appellant.

Fourth District   No. 4—89—0270

Opinion filed December 21, 1989.—Modified on denial of rehearing March 12, 1990.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Norbert J. Goetten, State's Attorney, of Carrollton (Kenneth R. Boyle, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Kevin Cathers was charged by information with residential burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—3) and theft under $300 (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(a)(1)) of a video cassette recorder (VCR) from the home of Vincent Edwards on April 26, 1988. Defendant's brother Michael was separately charged by information with the same offenses. Separate counsel were appointed by the court for each defendant, they waived trial by jury and were tried in a bench trial simultaneously. On August 23, 1988, the circuit court of Greene County convicted defendant on both counts and sentenced him on September 23, 1988, to 14 years' imprisonment for residential burglary and 364 days' imprisonment for theft, the sentences to run concurrently. Defendant was also ordered to pay $3,000 as reimbursement for court-appointed counsel. Defendant's motion for a new trial was denied, and the defendant filed a timely notice of appeal on September 23, 1988.

On appeal, defendant contests the admission into evidence of his brother's statement and asserts ineffective assistance of counsel because of the failure of his attorney to object to the admission on *Bruton* grounds. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) Defendant also challenges the order requiring reimbursement of attorney fees.

The facts will be reviewed only as they are necessary to this disposition.

The defendants were charged with the burglary of Vincent Edwards' home in Roodhouse, Illinois, and with the theft of a VCR from Vincent Edwards. The record does not reflect any motion for the joinder of the prosecution by either the State or the defendants, but likewise there was no objection by either defendant when the cases were called for bench trial. Michael made a statement to police immediately after his arrest implicating the defendant. In substance, Michael indicated that he was driving his own car, he let the defendant out to do something, he didn't know what, and about 10 or 15 minutes later, the defendant got back into the car with a VCR in his possession. He then took the defendant to their home, where the defendant got out of his car, and into his own car, and the two met a few blocks from their residence. The defendant took the VCR out of Michael's car and put it into his car. Michael then took his car home

and got into Kevin's car. The brothers went to Granite City on April 27, 1988, and to Alpine Cleaners in Madison, Illinois, where they sold the VCR to a Frank Marsala for $65.

Michael had made a motion in the trial court to suppress the statement as being involuntary. The record does not reflect any objection by defendant's counsel asserting a *Bruton* violation. The trial court found that the statement was voluntary and denied Michael's motion to suppress. The record does not reflect any indication by the trial court that this statement would be considered only as evidence against Michael. The defendant in his motion for new trial does not assert that the trial court used the statement of Michael in determining the guilt of the defendant. The State argues that the defendant has waived any error concerning the statement made by Michael. We find the State's position is well taken but, even on the merits, the defendant's assertion that there was a *Bruton* violation is without merit.

The supreme court has recently considered the issue raised by the defendant in this case. In *People v. Schmitt* (1989), 131 Ill. 2d 128, 545 N.E.2d 665, a codefendant, Nielsen, moved for a severance of his case from that of Schmitt, alleging that Schmitt had given written and oral statements implicating Nielson and that their theories of defense were antagonistic. No ruling was procured on this motion prior to the commencement of the trial, but by agreement of the parties, the court proceeded as if the cases had been severed, conducting simultaneous but separate bench trials. During the course of the trial, Nielsen's attorney repeatedly objected to the testimony regarding Schmitt's statements implicating Nielsen. The court time and again sustained counsel's objections and assured Nielsen's attorney that " '[t]hroughout, the Court is not considering statements made by Schmitt with regard to Nielsen.' " (*Schmitt*, 131 Ill. 2d at 132, 545 N.E.2d at 666.) In approving the joint trial of defendants in *Schmitt*, the supreme court stated:

> "We do not mean to imply that the procedure employed in the instant case is without its pitfalls—there are many. Any court employing such a procedure would do well to exercise the utmost caution to recite for the record its findings in each case and the reasons for its rulings. That said, we do not find the task beyond the abilities of circuit court judges or one to be undertaken only by the offspring of Zeus. (*Schmitt*, 131 Ill. 2d at 137-38, 545 N.E.2d at 669.)

The supreme court emphasized that there was nothing in the record to indicate the court relied upon the post-arrest statements of Sch-

mitt where he named defendant Nielson as his drug source. Further the court stated:

"We must presume the trial court considered only competent evidence unless the contrary affirmatively appears of record or the trial court, confronted with serious improprieties in a case where a defendant's guilt is not manifest, fails to comment on the irregularities or even indicate an awareness thereof." *Schmitt*, 131 Ill. 2d at 138-39, 545 N.E.2d at 669.

■ The trial court "would do well to" have recited for the record its findings in this case insofar as the statement of Michael was concerned and whether the statement would be considered in determining the guilt of defendant. (*Schmitt*, 131 Ill. 2d 128, 545 N.E.2d 665.) However, there is nothing in this record to indicate that the trial judge considered matters other than competent evidence in finding the defendant guilty. No error.

The record in this case shows that the defendant's guilt was manifest and proved beyond a reasonable doubt. Frank Marsala, the owner of Alpine Cleaners in Madison, Illinois, testified that the last time he had occasion to see the defendant and Michael was at his place of business, where they came to him to sell him a VCR. He testified he believed defendant was driving the car and Michael was sitting on the passenger side. When they discussed the purchase of the VCR, he asked them if it was stolen and "they told me no." Marsala purchased the VCR from the defendant and Michael for $65. The VCR was recovered, was properly identified and admitted into evidence against the defendant and Michael. The trip to Madison by the defendants with the VCR occurred within 24 hours after the burglary. There was also testimony that the defendant was acquainted with the victim's house and had been in the house several times before. With respect to the testimony concerning entry into the victim's house, there was testimony of the victim, his wife and the police officer investigating the incident that there was no forced entry. There was testimony concerning the victim's wife losing a set of keys to the house, but that is not important to the disposition of this case. Terry Osborne, a neighbor of the Edwards, was also a witness presented by the State. During the evening hours of April 26, 1988, he noticed a car suspiciously driving up and down the streets by the witness' house. He identified the car as having a white vinyl top but could not tell the color of the bottom of the car except that it was a dark color. Osborne called the police, and, subsequently, the police picked up Mr. Osborne and went to the defendant's home. Osborne identified the car in the driveway of the defendant's home as similar

to the car he had seen driving up and down the street. The policeman also testified that the hood of the car was warm to the touch.

■ The testimony of Marsala concerning the possession of the fruits of the burglary was proper for the trier of fact to consider in determining the guilt of the defendant. (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) Even in the absence of the statement made by Michael, the defendant's guilt was proved beyond a reasonable doubt.

■ Defendant argues *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, supports reversal of defendant's conviction and sentence. In *Lee,* the Supreme Court discussed the use of codefendants' statements and confessions. The Supreme Court acknowledged the precedent of *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531. Per *Roberts,* the statement of Michael would be admissible even though he is unavailable as a witness if the "statement bears sufficient 'indicia of reliability' to rebut the presumption of unreliability that attaches to codefendants' confessions." The hearsay evidence must fall within a firmly rooted hearsay exception. The Supreme Court clearly pointed out in *Lee* those matters which indicated the statement of the codefendant, Thomas, did not have sufficient indicia of reliability. It found that the confession was elicited only after Thomas was told that Lee implicated him in the criminal offense, Lee implored Thomas to share the responsibility, police had already interrogated Lee and knew what they were looking for and Thomas had contemplated becoming a witness against Lee. The majority in *Lee,* following *Roberts,* found on the facts there was no showing of reliability.

■ In determining whether the statement is trustworthy, Cleary refers to tests for trustworthiness:

> "(1) Does the trier of fact have 'a satisfactory basis for evaluating the truth of the prior statement?' (2) How 'real' is the possibility that cross-examination 'could conceivably have shown the jury that the statement, though made, might have been unreliable?' (3) What 'indicia of reliability' were present *** although there was not confrontation of the declarant?" (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §807.1, at 616 (4th ed. 1984), quoting *Park v. Huff* (5th Cir. 1974), 493 F.2d 923, 931, *remanded after en banc rehearing* (5th Cir. 1975), 506 F.2d 849.)

Cleary refers to *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1, where the supreme court cited the indicia of reliability concerning hearsay testimony of defense witnesses. Elements showing reliability

were that the statement was secured shortly after the crime, the crime was corroborated by other evidence, the statement was self-incriminating and a declaration against interest, and there was an opportunity for cross-examination. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §804.7, at 607 (4th ed. 1984).

■ Although here there was no opportunity for cross-examination, the statement of Michael occurred shortly after the crime, the statement was voluntary, the statement was self-incriminating and a declaration against interest, and the statement was corroborated by direct evidence given by other witnesses.

■ As stated in *Roberts*:

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

Likewise, there is no *Bruton* problem. *Bruton* involved a jury trial and limiting instructions. The *Lee* Court stated:

"[T]his is not strictly speaking a *Bruton* case because we are not here concerned with the effectiveness of limiting instructions in preventing spill-over prejudice to a defendant when his codefendant's confession is admitted against the codefendant at a joint trial." (*Lee*, 476 U.S. at 542, 90 L. Ed. 2d at 527, 106 S. Ct. at 2063.)

"We based our decision in *Bruton* on the fact that a confession that incriminates an accomplice is so 'inevitably suspect' and 'devastating' that the ordinarily sound assumption that a jury will be able to follow faithfully its instructions could not be applied." *Lee*, 476 U.S. at 542, 90 L. Ed. 2d at 527, 106 S. Ct. at 2063.

■ The *Lee* Court remanded the case for a determination whether the error was harmless. Here, the record does not show the trial court considered the codefendant's confession. There was sufficient evidence to find defendant guilty beyond a reasonable doubt excluding the confession. Any asserted *Lee* error, if meritorious, would be harmless.

■ With respect to the assertion of error on the part of the trial court in ordering the defendant to pay $3,000 as reimbursement for court-appointed counsel, the State concedes the order was erroneous as the defendant could not comply with the restitution order. That

portion of the sentence is reversed.

The defendant's conviction and sentence are affirmed, and the order for reimbursement for court-appointed counsel is set aside.

Affirmed in part; reversed in part.

KNECHT, P.J., and GREEN, J., concur.